UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re Navarre Corporation Securities
Litigation

Civil No. 05-1151 (PAM/RLE)

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss the Second Consolidated Amended Class Action Complaint.  For the reasons that follow, the Motion is granted in part and denied in part.

**BACKGROUND**

**A.    Introduction**

This is a putative class action for securities fraud.  Defendant Navarre Corporation is a publicly-traded Minnesota corporation in the business of publishing and distributing various entertainment and multimedia products.  Defendants Eric H. Paulson, James G. Gilbertson, Brian T. Burke, Charles E. Cheney, and Cary L. Deacon are senior corporate officers of Navarre.  Plaintiffs are investors who acquired Navarre securities between January 21, 2004 and September 19, 2005.  Plaintiffs contend that during this period of time, Defendants caused Navarre's stock price to be artificially inflated by materially overstating Navarre's publicly-reported net income for five consecutive quarters, by concealing a decline in demand for Navarre's anti-virus and internet security products, and by deceiving investors

about Navarre's excessive inventory and accounts receivable.  During the same time frame, Navarre's stock price rose from approximately $6 to $20 a share, and Defendants made a $13.8 million cumulative profit from selling their own stock.

## B.    Procedural History

Plaintiffs brought suit on June 13, 2005, alleging two causes of action: (1) violations of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, and (2) violations of § 20 of the Exchange Act.  Defendants moved to dismiss the complaint, and the Court granted the motion in part based on Plaintiffs' failure to allege that any Defendant knew <u>at the time</u> he made a statement that the statement was false, misleading, or reckless. That is, Plaintiffs did not adequately plead a strong and reasonable inference of scienter. Plaintiffs requested and received permission to file an amended complaint, which they filed on July 28, 2006.

## C.    Allegations in the Second Consolidated Amended Class Action Complaint

### 1.    <u>Defendants Paulson and Gilbertson</u>

In November 2001, Paulson executed a new employment agreement with Navarre. The agreement established an incentive-based deferred compensation plan based on Navarre's stock trading price.  Under the terms of the agreement, any compensation awards would be paid to Paulson after his employment term expired on March 31, 2007.  Paulson first earned an award under the agreement for the third quarter of the 2004 fiscal year.  This was a recognizable event for reporting under Generally Accepted Accounting Principles (GAAP), even though it would not be paid for several years.  As Navarre's Chief Financial

Officer (CFO), Gilbertson knew that this award must be immediately recorded as a liability, which he told Paulson. The two Defendants also discussed the repercussions of recording this liability—Navarre's quarterly income would be materially reduced, which would likely cause Navarre's stock price to collapse, which in turn would jeopardize Paulson's ability to earn future compensation awards.

Gilbertson and Paulson deliberately decided not to report Paulson's compensation award. To avoid a reoccurrence of this situation, Paulson executed an amendment to his employment agreement, providing that his compensation awards would be conditioned on his compliance with a pre-existing non-compete clause. According to Gilbertson's accounting, if Navarre's obligation to pay a compensation award was contingent on a future event, Navarre could legitimately defer reporting the obligation. Plaintiffs characterize this as a sham because a liability may be deferred only if a contingency is "remote," and both Gilbertson and Paulson knew that Paulson was not going to violate the non-compete clause. Paulson was already legally obligated not to compete by the prior employment agreement.

Meanwhile, in January 2004, Paulson stated in a press release and during a conference call with analysts that Navarre was experiencing phenomenal growth due to acquisitions and intrinsic growth. Navarre's stock price rose as a result. In February 2004, Navarre issued a press release forecasting increased sales and income. Paulson also publicly commented favorably on Navarre's sales, income, and growth. In May 2004, Navarre issued a press release reporting a 641% increase in net income over the previous fiscal quarter, and Paulson and Gilbertson remarked favorably on the results during a conference call with industry

3

analysts. Navarre's stock price rose 15.4%. Paulson earned the maximum deferred compensation award for the first quarter of fiscal year 2005 (April-June 2004), and Navarre continued to defer the liability.

2.     <u>Other Acts Artificially Inflating Navarre's Net Income</u>

Navarre dismissed Ernst & Young LLP as its auditor in July 2004 and hired Grant Thornton LLP. One day after this announcement, Navarre reported record results for the fiscal year and raised its earnings projections. Plaintiffs allege that the change in auditors was made to hide Navarre's accounting violations.

During a subsequent conference call with analysts, Deacon and Burke expressly denied that the increasing practice of downloading software from the internet was adversely affecting Navarre's overall business. They viewed the trend as an opportunity to increase sales of their spyware and internet security products. Plaintiffs nevertheless characterize Defendants' representations as misleading because they knew that demand had declined materially and that many consumers were downloading software from the internet.

By late July 2004, Navarre's stock was trading around $15 a share. In October 2004, Paulson announced a 186% increase in Navarre's net income. Navarre also issued a press release in which Paulson touted Navarre's "organic growth" and Gilbertson commented on the strength of personal computer software sales. In the third quarter of fiscal year 2005, Navarre realized a $2.4 million tax benefit related to employee stock option transactions. Plaintiffs allege that Navarre improperly recorded this tax benefit as income, rather than a

credit to its common stock, as required by GAAP.  This caused a 30.5% overstatement in earnings.

In late January 2005, Navarre issued a press release showing that its inventory levels had more than doubled since March 2004, its accounts receivables had substantially increased, and its cash had significantly decreased.  Gilbertson told analysts the next day that sales were down 22% through September 2004, but that Navarre had purposefully increased its inventory of internet security products because sales and demand were increasing.  Navarre's stock immediately dropped 18.8% in response to this statement.

Navarre had acquired a 45% interest in a company called Mix & Burn in May 2004, and it loaned $2.5 million to Mix & Burn in 2004 and 2005.  Navarre had a duty under GAAP to consolidate this liability into its financial statements but failed to do so.  Had it consolidated Mix & Burn's losses, Navarre's income would have been substantially reduced for fiscal years 2004, 2005, and 2006.

Navarre issued a press release in May 2005, announcing it would postpone releasing financial results pending an accounting review.  The next month, Navarre restated its financial statements for the third fiscal quarter of 2004 through the third fiscal quarter of 2005.  Navarre announced a second restatement in November 2005.  In the restatements, Navarre admitted it had not recognized expenses for Paulson's deferred compensation and retirement plans; failed to recognize expenses related to a severance agreement with Cheney; improperly recorded a $2.4 million deferred tax benefit as income; and failed to consolidate

Mix & Burn's losses into its financial statements.  Navarre's stock price fell from $7.24 to $5.80 per share.

**DISCUSSION**

Defendants move to dismiss the Second Consolidated Amended Class Action Complaint on one basis: whether Plaintiffs have now alleged sufficient facts that each Defendant knew or recklessly disregarded that statements were false or misleading when made.  They do not raise any new grounds for dismissal, and the Court will confine its discussion to this narrow issue.

**A.     Standard of Review**

Generally, a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6) requires a court to assume all factual allegations in a complaint as true and to grant plaintiffs all reasonable inferences that may be drawn from the complaint.  Fed. R. Civ. P. 12(b)(6); In re Navarre Corp. Sec. Litig., 299 F.3d 735, 741 (8th Cir. 2002).  However, when Congress adopted the Private Securities Litigation Reform Act (PSLRA), it raised the pleading standards for securities fraud class action claims.  In re Navarre, 299 F.3d at 741; see also 15 U.S.C. §§ 78j, 78t(a); 17 C.F.R. § 240.10b-5.  The PSLRA was designed to encompass at the very least the heightened pleading standards of Rule 9(b).  Kushner v. Beverly Enter., Inc., 317 F.3d 820, 826 (8th Cir. 2003).

In order to proceed on claims of fraud brought under § 10(b) and Rule 10b-5, Plaintiffs must allege four elements:

(1) misrepresentations or omissions of material fact or acts that operated as a fraud or deceit in violation of the rule; (2) causation, often analyzed in terms of materiality and reliance; (3) scienter on the part of the defendants; and (4) economic harm caused by the fraudulent activity occurring in connection with the purchase and sale of a security.

In re K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 888 (8th Cir. 2002) (citations omitted). The PSLRA requires that both falsity and scienter be pled with particularity. In re Navarre, 299 F.3d at 742. Thus, a complaint must "specify each misleading statement or omission and specify why the statement or omission was misleading." Kushner, 317 F.3d at 826 (citing 15 U.S.C. § 78u-4(b)(1). In addition, Plaintiffs must set forth facts showing how each statement was knowingly or recklessly false or misleading at the time it was made. See In re: Cerner Corp. Sec. Litig., 425 F.3d 1079, 1085-86 (8th Cir. 2005); In re AMDOCS Ltd. Sec. Litig., 390 F.3d 542, 549-50 (8th Cir. 2004) (Wollman, J., concurring).

Plaintiffs must plead facts giving rise not just to a reasonable inference of scienter, but to a reasonable and strong inference that the statements were made either with the intent to defraud or deceive, or with recklessness. Kushner, 317 F.3d at 826 (citation omitted); In re Navarre, 299 F.3d at 742. "One of the classic fact patterns giving rise to a strong inference of scienter is that defendants published statements when they knew facts or had access to information suggesting that their public statements were materially inaccurate." Fla. State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 665 (8th Cir. 2001). In the securities fraud context, recklessness is defined as "'an extreme departure from the standards of ordinary care . . . that present[s] a danger of misleading buyers or sellers which is either

known to the defendant or is so obvious that the defendant must have been aware of it.'" <u>Id.</u>
at 654 (quoting <u>Camp v. Dema</u>, 948 F.2d 455, 461 (8th Cir. 1991)).

## B.   Whether Plaintiffs Have Now Alleged Sufficient Facts of Scienter

The Court begins with the allegations that Paulson and Gilbertson knew or recklessly
disregarded that certain statements, reports, or accounting treatments were false or
misleading when made.   According to the Second Consolidated Amended Class Action
Complaint, Paulson and Gilbertson decided not to report Paulson's deferred compensation
award in order to artificially inflate Navarre's income and stock price.   They knew at the time
they reported Navarre's income that the omission was false and misleading.   In addition,
Navarre recognized the benefit gained from the employee option transactions as income,
even though this was expressly prohibited by GAAP.   As CFO, Gilbertson was responsible
for the misstatement.   Plaintiffs have also pled that during the class period, Paulson and
Gilbertson possessed facts rendering Navarre's financial results materially false at the time
those results were released to the public or reported.   The Court has viewed the particular
allegations against Paulson and Gilbertson and concludes that Plaintiffs have adequately pled
scienter.

The Court reaches a different conclusion with respect to Deacon and Burke.   The
Second Consolidated Amended Class Action Complaint alleges that these Defendants knew,

or were reckless in not knowing, that the trend of downloading software from the internet
was adversely affecting demand for Navarre's boxed products, when they told analysts in

8

July 2004 that the trend was not impacting Navarre's overall business. However, during this time period, Navarre's revenues were increasing, and Navarre did not restate its sales numbers. It is material that Deacon and Burke phrased their statements in terms of Navarre's overall business. In addition, when Navarre's inventories increased, it was a reasonable inference that increased revenues would follow. Lastly, Plaintiffs have not alleged facts contradicting Burke's statement that the trend of downloading could actually provide an opportunity for increased sales of Navarre's spyware and internet security products. Thus, the statements were not necessarily inconsistent with the strength of Navarre's business. See In re: Cerner, 425 F.3d at 1083-84.

As for fraud based on improper accounting methods, there are no allegations that either Deacon or Burke knew, or was reckless in not knowing, at the time he made a statement or representation, that Navarre's accounting methods were incorrect. Finally, most of Plaintiffs' other allegations are made against Defendants as a group, which is too nebulous to support a strong and reasonable inference of scienter against a particular Defendant. See Green Tree, 270 F.3d at 660 (instructing courts to disregard catch-all and blanket assertions). Plaintiffs have not adequately alleged that Deacon or Burke knew at the time a statement was made that the statement was false, misleading, or reckless. Consequently, the Court dismisses Deacon and Burke as Defendants in this case.

Particularized allegations of scienter against Cheney are even more scarce. Indeed, the Second Consolidated Amended Class Action Complaint avers that Cheney took a leave of absence from Navarre in 2002, before the class period began, and resigned on April 30,

2004, although he continues to hold a position on the board of directors.  Plaintiffs' main charge against Cheney is that as Navarre's prior CFO, he should have known that Navarre's treatment of his severance package was improper.  However, Cheney was no longer a corporate officer when Navarre failed to report expenses related to his severance.  In addition, Plaintiffs have alleged no fraudulent misrepresentation by Cheney.  Accordingly, the Court dismisses Cheney from the suit.

**CONCLUSION**

The Second Consolidated Amended Class Action Complaint sufficiently alleges that Paulson and Gilbertson knew or recklessly disregarded that statements were false or misleading when made.  On the other hand, Plaintiffs' amended allegations are lacking against Deacon, Burke, and Cheney.  Plaintiffs' request for another opportunity to amend is denied.  Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss the Second Consolidated Amended Class Action Complaint (Docket No. 71) is **GRANTED in part and DENIED in part**; and

2.      Defendants Deacon, Burke, and Cheney are dismissed from this case.

Dated: December 21, 2006

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge